Virginia Allen, Admrx.,

*vs.*

The Aroostook Valley Railroad Company.

Aroostook.   Opinion November 6, 1916.

*Pleadings under Public Laws of Maine, 1913, Chapter 27.   Rule of law as to duty owed to a licensee or trespasser.   Duty owed to an invitee.*

Action on the case for wrongful injuries causing the death of John E. Allen, plaintiff's intestate.   Allen had charge of loading and shipping potatoes and of the fitting of cars for the same.   He was in the employment of the Aroostook Potato Growers Association and not of the defendant.   On the day of the accident, after a car had been lined, the stove set and the funnel attached and secured by a workman, the intestate went on top of the car, came in contact with the heavily charged trolley wire, which at this point was only one foot above the top, and was instantly killed.   The car had been placed in this position on the side track by the defendant.   The case is before this court on report.

*Held;*

1. Whether it was negligence on the part of the defendant to allow its trolley wire to remain in such an unusual and dangerous position without warning to the plaintiff depends upon the legal relation existing between the parties, and the defendant's duty to the deceased at the time.

2.  This measure of duty varies according as the deceased was an invitee or a mere licensee or trespasser.
3.  If he was an invitee the defendant owed him the duty of having the top of the car reasonably safe or of giving him ample warning if it was unsafe.
4.  If he was a trespasser, or a mere licensee, the defendant owed him no higher duty than to abstain from wantonly injuring him.
5.  Giving full weight to the evidence and considering it in the light of all the circumstances, we are of opinion that the deceased was at best a mere licensee, that the defendant was guilty of no breach of duty toward him and that in accordance with well settled legal principles the plaintiff has no valid cause of action.

Action on the case to recover damages for the death of the plaintiff's intestate, alleged to have been caused through the negligence of the defendant. Defendant pleaded general issue and brief statement setting forth that at the time the plaintiff's intestate met his death, he was not in the exercise of due care. At conclusion of testimony, case was reported to Law Court to determine all questions of law and fact involved, and stipulation was made as to amount of damage in case the Law Court should find the plaintiff entitled to recover. Judgment for defendant.

Case stated in opinion.

*A. B. Donworth,* and *R. W. Shaw,* for plaintiff.

*John B. Roberts, C. F. Daggett, and W. R. Pattangall,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHILBROOK, JJ.

CORNISH, J. Case for wrongful injuries causing the immediate death of John E. Allen, plaintiff's intestate. The following facts are fairly deducible from the evidence. Allen was, at the time of his death, and had been for several years prior thereto, in the employ of the Aroostook Potato Growers Association. He bought potatoes for a local branch and had charge of the loading and shipping, employing the necessary men therefor. The preparation of a car for shipment in cold weather consisted in the construction of a false lining on the bottom and sides with a six inch air space for circulation, the placing of a stove in the center between the doors, with the stove pipe passing horizontally through a tem-

porary fire board placed in the door and into an elbow pipe extending up past the eaves of the car. The top of the funnel is secured by wiring it either to the roof of the car or to the side beneath the eaves, and should extend, according to the rules of the road, a distance of from six to twelve inches above the eaves. By arrangement with the Association, the defendant had placed one of its empty box cars on a siding in the town of Caribou, near the Tuttle potato house. It was to be lined and fitted at that point by Allen, or under his direction, and then was to be taken by the defendant to Paul's siding, a distance of about two miles, for loading. On Saturday, November 14, 1914, both Allen and his workman Randall were engaged in putting in the lining. On Monday forenoon Randall and another workman continued the work and set up the stove. Immediately after dinner on Monday Randall alone set up the funnel and attached the wire, thus completing the job. In doing this he used a portable ladder which he placed against the side of the car. Allen seems to have done no part of the work on Monday, although he was at the potato house while the work was going on. At the point where the car was placed on the track it was directly beneath a trolley wire of the defendant carrying a voltage of at least twelve hundred volts. This trolley wire was attached by means of a cross wire to the corner of the potato house and thence ran along to the next regular pole. This reduced the space between the top of the car and the trolley wire to about one foot while the usual distance on the defendant's line was about six or eight feet.

On Monday afternoon, November 16th, shortly after the wiring had been completed, Allen climbed up to the roof of the car by means of the stationary iron rounds near the end. No one saw him start and he had told no one of his purpose. No one saw him on his way up, but as the upper part of his body rose above the top of the car he was seen by two boys who were on the railroad track forty-one feet away, and on the opposite side of the car. When he came into view they state that he seemed to be standing on the top rung of the ladder, that he reached out and grasped the brake wheel with his right hand, then slipped in some way and his left hand struck the trolley wire. This made the fatal connection and his death followed instantaneously. Con-

siderable testimony was introduced by the defendant for the purpose of showing that death was due to natural causes, but we think that in view of the situation and circumstances we are warranted in holding that it was due to the electric shock.

The negligence charged is "in allowing said dangerous wire to be in such an unusual and unexpected position, and negligently failing and omitting to notify said intestate of said dangerous position." This question must be considered in the light of the defendant's duty to the deceased at the time. It matters not whether the wire was so placed as to be safe or unsafe as to the employees of the company who had occasion to come into proximity to it in the performance of their duties. Allen was not an employee or servant of the company and it was not in law negligence as to him, to maintain the wire in its low position unless there was a failure of duty on the part of the defendant with respect to the legal relation existing between them. As to what that legal relation was the parties differ, but on whatever hypothesis the plaintiff's claim may rest we are unable to discover a legal ground for recovery.

The deceased may have been an invitee, a licensee or a trespasser, and the measure of duty on the part of the defendant varies accordingly.

If Allen went to the top of the car on business connected with the business in which the defendant was engaged and in the ordinary and natural performance of his work in fitting the car, so that the defendant knew or by the exercise of reasonable care and diligence should have known that his work would take him into that locality, then he was there by implied invitation of the defendant, and in that event the defendant would owe him the duty of having the top of the car and its surroundings reasonably safe, or of giving him ample warning if the condition was unsafe. This is the plaintiff's contention.

If, on the other hand, he had no business on the top of the car, and went there for the purpose of releasing the brake so that the car could be moved a short distance down the siding to take on wood, and if the releasing of the brake and the moving of the car were under the exclusive control of the defendant and its servants, then the deceased was a trespasser, or at best a mere licensee, and

the defendant owed him no higher duty than to abstain from wantonly injuring him. *Parker* v. *Portland Pub. Co.,* 69 Maine, 173; *Dixon* v. *Swift,* 98 Maine, 207; *Stanwood* v. *Clancy,* 106 Maine, 72; *Elie* v. *St. Ry. Co.,* 112 Maine, 178. This is the contention of the defendant.

Assuming the plaintiff's contention that he was an invitee to be true, right of recovery by no means follows in this case. The wire in question was in full view both from the ground and at the top of the car. It was broad daylight and the deceased could not have failed to see it and its precise location if he had looked. From his experience he must have known that it was the trolley wire which propelled the cars and was necessarily of high and perilous voltage. There was no trap. The danger was an open one. To grasp the wire voluntarily would have been the height of carelessness and would have sustained the burden of proving contributory negligence thrown upon the defendant by its pleadings under P. L., 1913, ch. 27. To slip upon the moist roof and grasp the wire involuntarily in falling, as the testimony of the eye witnesses indicates, would seem to render the occurrence an accident for which neither party should be held at fault. *Powers* v. *Wyman & Gordon Co.,* 99 Maine, 591.

But we must not stop with an assumption of facts. We should go farther and determine them. The evidence in support of the plaintiff's contention as to implied invitation, or of the defendant's as to trespass or license, though somewhat meagre, is ample to compel a conclusion in favor of the defendant.

The burden rests upon the plaintiff on this issue, and we are of opinion that that burden has not been sustained. The learned counsel for the plaintiff argues that the deceased was going upon the top of the car to ascertain whether the wire was properly fastened and whether the top of the funnel was at the regulation height. But this is almost wholly an assumption. There is no evidence of the fact. It does not appear that Allen had done this before or that he had considered it necessary. He said nothing to Randall about it. He had left the job for Randall to complete and Randall had completed it. The fastening of the wire was a simple matter and required neither skill nor minute inspection. Moreover he could have ascertained while standing on the ground

whether the top of the pipe was within the regulation limits. To climb to the top of the car for either purpose seems quite unnecessary.

On the other hand there is evidence that while the work was in progress the suggestion had been made that it would be well to drop the car down to the potato house for the purpose of taking on wood. Someone in the group had made the suggestion, and by a process of elimination Mr. Allen seems to have been the person. To drop the car down it was first necessary to release the brake, and the testimony of the boys as to what Allen was doing at the time of the accident strengthens the defendant's claim that he was carrying the suggestion into effect. His hand was upon the brake wheel immediately prior to the accident. The evidence further shows that the defendant's servants alone had authority to release the brake or move the car. It was set in place by them and should be moved by them. Mr. Allen had no right to interfere.

On the whole, giving full weight to all the evidence and considering it in the light of the circumstances, we are forced to the conclusion that at the time of the accident the deceased was either a trespasser or at best a mere licensee, that the defendant was guilty of no breach of duty towards him and that in accordance with well settled legal prinriples the plaintiff has no valid cause of action.

The entry must therefore be,

*Judgment for defendant.*